We will call 4-23-0094 Alvin Marsh et al. versus Richard Middleton et al. Council for the Appellant, please state your name for the record. My name is Tom Patterson, your Honor, and I'm Counsel for the Appellant. Thank you. Mr. Patterson, you're welcome to go ahead and step up there. Thank you. Counsel for the Appellee, could you please state your name for the record? Good morning. Ann Barron for Ralph Davis Law Firm. Thank you. Mr. Patterson, you may proceed. I'm sorry, yes sir. Good morning. Forgive me. I'm Dan Leier for the Speer Law Firm, the estate of Charles Speer in Peterburg, New York. Thank you, Counsel. Mr. Patterson, you may proceed. Thank you, Your Honor. I come to propose a counsel and may it please the Court. The elements of a legal malpractice action are duty, breach, causation, and damages. In this case, we have alleged a legal malpractice case, and it is subject to the two-year statute of limitations and the six-year statute of repose. And the lower court dismissed the case with prejudice on grounds that we failed to come within the two-year statute of limitations. The jury verdict that was lost was lost in May of 2016. There was a motion for attorney fees made pursuant to the Nuisance Act in June or July of 2016. That motion was denied by the trial court in 2019. This court then reversed that ruling in 2020, and the case was remanded back to the trial court. And in 2021, the trial court, which had taken the attorney fee petition in camera and under advisement, issued a ruling that there was an attorney fee liability of $2.5 million. That was ultimately settled for $2.1 million. Actual damages are an essential element of a legal malpractice case. This court had a rather arresting image for that in the Kahn case, where it said it's not the upraised arm that triggers damages, it's the actual blow. So I think the court rule said it was the blow and not the upraised arm that created damages. And so whatever the upraised arm was in 2016 or 2019 or with the motion, the blow didn't fall, and we didn't know of any blow until 2020 when this court ruled that attorney fees should be, must be, had to be awarded to the defendants because they had defeated the plaintiffs in the underlying nuisance lawsuit. It is not the negligent act that triggers the statute of limitations. It is the actual damages. It's the pecuniary loss. That's the Kahn case, the Suburban v. Carlson case, Evanston-Riceboro case, the Northern Illinois Emergency Physician case. And yes, many cases state that it is an adverse judgment that can trigger notice. But the question is, what adverse judgment are we talking about here? The loss of the nuisance case in 2016 for which we are not claiming damages, or the loss of the attorney fees that we had to pay for which we are seeking damages. And that judgment was issued only after this court reversed the trial court's ruling, and the trial court then assessed attorney fees against us. So that's the adverse judgment. That's what creates the damages. We had no right to seek attorney fee damages before that time. So, and that's the Learning Curve case. In this Learning Curve case, there was an adverse jury verdict, but the judge granted judgment NOV. And so there was no liability at that time. Then the Seventh Circuit, I believe it was, reversed the case. And that's what triggered the statute at that time. So it wasn't, it's not the adverse jury verdict here. It is the adverse verdict on the attorney fee petition that triggers the claim. If somehow the damages were attributable to the jury verdict, we nevertheless had no knowledge of their wrongful causation until this court had ruled in 2020. Our lawyer said that it was highly unlikely that those attorney fees would be imposed, and the trial court had said the attorney fees should not be imposed, and had ruled against the defendants in that respect. And it's unreasonable for us as laypeople to be charged with the responsibility of analyzing an opponent's brief, or second-guessing our own lawyers, or asking for a second opinion when they told us that it was highly unlikely that such fees would be awarded. And they completely failed to indicate what the amount of those fees might be, what the risk was, even though they were parties to a federal case in which the insurers were arguing about the fees, and they knew they were in excess of seven figures. And so it was a complete failure not only to warn of the highly likely aspect of the attorney fees being awarded, but there was no discussion at all of the amount. And so the attorneys were not, I mean, the clients were not able to effectively collaborate and participate in decisions about their case. The Butler case was an adverse jury verdict, but because the plaintiffs did not know what the damages, why the damages were imposed, or the basis for the court's ruling, the court there ruled that it was not until the appellate court denied the appeal that was made by their defendants in that case that the plaintiffs could know of the possibility that they were injured and its probable wrongful causation. So while an adverse jury verdict can trigger knowledge, it's the question of, in this case, which verdict are we talking about? Which judgment are we talking about? And then it's a question of, well, what did the clients know, and when did they know it? And the Butler case would justify not imposing those two-year statute limitations on that ground alone. The cases say that an opponent's motion is not noticed to a client. Laymen are presumed not to know the law as well as lawyers do. And for the lawyers to now say that we should have known that this statute was a formality, that the attorney fee's imposition was a formality, was mandatory, was required, was non-discretionary, is totally 100 percent in opposition to the advice they gave us at the time, a total 180-degree contradiction because the advice at the time was it's highly unlikely, it's unconstitutional, it won't happen. If we were forced to file a lawsuit within two years of the jury verdict in 2016, that means that we would have had to file by 2018. And that means we would have had to say in 2018 or sooner that we are liable for attorney fees at the same time our attorneys were arguing that we were not liable for attorney fees, and they were successful in arguing that in 2019. So we would have had to waive the attorney-client privilege because a legal malpractice waives that. It would have prevented our collaboration with the attorneys. It would have wasted the judicial resources in the event that they were successful in defending the trial court's action. It would have contradicted the argument. And the case would have been subject to dismissal because we wouldn't have been able to sue for damages. In other words, if we had come into court in 2018 and said we're liable for attorney fees, we don't know the amount, but we're liable for attorney fees, and our lawyers committed malpractice, it would be subject to dismissal because the trial court had not yet ruled that we were subject to attorney fees. They had arguments that we were not liable for attorney fees, and ultimately the trial court said that we were not liable for attorney fees. So the case would have been subject to dismissal for lack of damages. That's under the Warnock case and the Evanston case and the Romano case, all discussed the public policy reasons why a premature legal malpractice action should not be filed until the actual damages have been assessed. The opposing argument is, as I understand it, that it's not the fact of damages but the amounts that it is an issue. But the fact is we were subject to no damages at all for which we are seeking claims here until 2020 when this court overruled the trial court. So the amount wasn't known until October or November of 2021. We filed within three months of knowing the amount. We filed within two years of this court's ruling. I think I've covered the fact that I don't believe we had a duty to inquire once an opponent filed a motion. We could have relied on our attorney's advice. We had no reason not to. We had sought to file an amended complaint to streamline the allegations. It was timely. It was not prejudicial. It certainly stated a cause of action. And it certainly detailed that there were fraudulent concealment aspects, too. If somehow the actual damages component of the argument and the lack of knowledge of injury don't prevail, then certainly we have a fraudulent concealment basis to survive the statute of limitations motion. The trial court's ruling was based on the fact that we were injured at the time the jury verdict was issued against us and that we were on notice as of the time that the defense filed a motion for attorney fees. But that flies in the face of all the cases that say we're not presumed to know the law. We are allowed to rely on our attorneys, and an opponent's lawsuit or motion does not necessarily alert us to anything. Thank you very much. Thank you. Counsel? I believe Justice Zeno has a question. Counsel? I'm sorry. I'm sorry. I wanted to wait. I know this is a difficult situation. Thank you. Good morning, counsel. Good morning. My question is, how does this June 23, 2016 letter show fraudulent concealment when it advised the plaintiffs that they could lose the case on appeal? If we look at the Hermanson case, you will see that the duty of disclosure is a lot more than just saying you might lose. There was no assessment of the risks of loss. There was no statement of the amount of loss. And, in fact, they said it was highly unlikely that such a motion would succeed. So if it's highly unlikely that a motion to assess these fees would succeed, and then they said they believed it was unconstitutional if the statute was deemed to apply, the fact that they said, well, we might lose, pales in comparison to what the argument is that they're making now. Now they say the statute was mandatory, nondiscretionary, a formality, they say in their appellate brief. There's no such warning at the time. And there's no warning of the amount of those fees. So, I mean, to be hit, it's a very strange situation that the attorney fees were submitted in camera. And that was part of the basis why we were able to cut some off the fees, because we said, hey, we were entitled to a hearing. But they were considered in camera, and then they came out with a $2.5 million reward. There was no discussion of what the extent of that risk that we faced was. And if you are four fine families that are suing on a contingency basis, being told that you had nothing to lose, and then all of a sudden it's a $2.5 million loss, there's no way that that's covered by that 2016 letter, in my opinion. Thank you, counsel. Thank you. Thank you, counsel. Ms. Barron, you may proceed. Good morning. As I mentioned earlier, I'm here for Ralph Davis and his law firm. Counsel's laid the background for the case. This is a legal malpractice case. The issue is the statute of limitations. And what I want to say is, look at the complaint when you go back through this letter. Look at the complaint that was filed. It wasn't just about the attorney fees. It was about all these other things that related to trial strategy, to the retention of experts, to matters that went to who are we going to present as a witness, who are we going to call from the neighbors. There's an allegation throughout the complaint, and particularly I believe it's in paragraph 57, that plaintiffs allege how the attorneys were negligent before the May 2016 trial in failing to inform the plaintiffs about various things. That would include the adverse consequences of a likely loss because one expert was disqualified. These neighbors who were prepared to testify that there were no odors emanating from the confinement facility. There was a likely loss because the facility was cleaned up before an expert inspected it. There was a likely loss because of delay in trial proceedings, improved operations at the facility, and failure to investigate. So when the original complaint was filed, those matters were all in that complaint, and those related to the trial and the adverse judgment that came out at trial. So how those can be subject to a malpractice action some almost six years later is violative of the statute of limitations. I think everybody agrees that the statute of limitations itself in 735 ILCS 5-13-214.3b incorporates the discovery rule. There's no disputing that. So it's when did you learn of these things? And certainly any errors with respect to the actual trial, the plaintiffs were well aware of those errors and the adverse judgment in May of 2016. Then when the fee petition came in, the defense counsel, current defendants I should say, the plaintiffs' attorneys back then, put the plaintiffs on notice. They sent letters saying, yes, we are hopeful that this will not be enforced, but there is a risk. There is a risk that attorney's fees could be assessed. So now we're accused of taking a different position. Well, I guess in deference to this court, this court has ruled on what that statute says. As a little bit of background, there was only one other case interpreting that statute. It was from the Illinois Supreme Court at that time. And that case did not address the attorney's fees position. Let me ask you a question. I think what you're asserting is they were totally dissatisfied with your representation. Correct. Because of all the things they said in the complaint. Right. Does that foreclose them from asserting another reason that they believed that there was malpractice? Well, I think it's when does that reason come to light? That reason would come to light when the attorney's fee petition was filed. And they were aware of it at that time. Well, would the trial court have been permitted to give a dollar of damages? You mean on the underlying case? A dollar of attorney's fees. Would the trial court have been foreclosed from doing that by law or equity? In the underlying case. In the attorney's fees issue. On the attorney's fees issue. You lose, but you don't know how much you've lost, in effect. Isn't that what the original plaintiffs are saying? That is what they're saying. But what we're saying is we put you on notice. And the trial court, Judge Cherry, it was Judge Cherry, I believe, in Morgan County in the underlying case. And excuse me if I have the county wrong. It could have been one of the other counties. He could have awarded attorney's fees at that time. Well, what if he'd awarded a dollar? Then they would be on notice. Well, we wouldn't be, would we? Well, probably not, Your Honor. The dollar probably would have been paid in attorney's fees. Unless, of course, the defendants in that case appealed the amount of the attorney's fees assessment. So, I have a question. So, sad enough, I mean, the injury here, the defendant's liability for the attorney's fees, and that did not come until 2020 when this court resolved the issue adversely to the plaintiffs, correct? Correct. That occurred in 2020. Okay. So, how is it that the statute of limitations that you say had run earlier than that? Well, of injury, that is, there is no ascertainment of the defendant's liability for these fees until 2020. That is the amount, not necessarily the adverse judgment that eventually gave rise to that amount. Well, so, what is your authority for saying that it is the adverse judgment that gave rise to the amount? Oh, I think there's numerous cases that talk about the adverse judgment, including the Illinois Supreme Court's most recent decision in the suburban real estate versus policy case. They talk about, you don't have to know everything about your claim at the time the statute of limitations starts running. You don't have to go get a second opinion from another attorney for the statute of limitations to run. You don't have to have a professional opinion letter. It's, what did you know then, and did you act upon it? That's really what the discovery rule is, as the discovery rule is incorporated into Section 214.3b. For the layperson, wouldn't a question arise as to what you knew, or what you discovered, or how you assessed what it meant when you lost? Right, but once you're on notice, you have a duty to investigate. You have a duty to ask. A plaintiff can't rely upon just standing by and doing nothing. Well, if the plaintiff asked, what would you have said? Back at that time? Yeah. Well, I was not there then. Oh, I understand, I understand. I mean, what would those attorneys say? I can't speculate about what would have been said then. What should have been said? What should have been said is, here's the statute. This is what they're seeking. But we don't think this applies. But we don't think this applies, and here's why. We have all these arguments. Okay, then the follow-up would be, what's our exposure? Correct. And the exposure is $2.5 million? Well, I don't know if it was at that point, but, you know, you could guess or estimate, if you were counsel, about how much that would be. Well, at some point, it would be a very significant amount. It could be, yes. Could be or would be? Well, you don't know how much. I mean, you're speculating upon what they're charging their clients, how much their clients have paid, if they have a special rate. Everybody in this litigation knew that it went on for a long time. That is correct. Well, nobody's working for $50 an hour. That might be true, Your Honor, but at the same time, are their fees reasonable? I think the statute does not refer to reasonable, and that's, I believe, one of the points Mr. Patterson was making is, we don't even know if these were reasonable because of the way they were submitted, but it does refer to reasonable. Can they actually obtain the fees from the insurance litigation that Mr. Patterson discussed? Those are things that, if the client had asked, you might discuss with them. When you have lawyers that are advising you, how many questions are you supposed to ask? Well, I think you're supposed to ask, it's not just in the legal world, but it's whenever you have a case that I suspect there might be wrongful conduct here, tell me what's going on, tell me how this happened, explain to me how we ended up with an adverse verdict, those kinds of questions. Does one distinguish between how wrongful the conduct is? I mean, is the level of risk associated with what a client is supposed to do? Well, I think the level of risk, if there's zero risk, or let's say 5% risk or 100% risk, the client has the duty to ask. Yeah, but I'm not talking about the risk of losing. I'm talking about the risk of what the damages will be, or what the attorney's fees will be. How do I, I'm a layperson, my lawyers are advising me, it is asserted that there were slim, probably aren't going to be awarded, we still don't think the statute applies, etc., etc. So I'm going to notice that something's funny, or off, or odd. What is it that prompts me to say, how much of the damage is going to be? Well, I think that's one of the questions that would be asked, is how much of the damage is here? Well, wouldn't the lawyers be speculating as to that? They would be. It would be hard to know if it's $500,000, $2.5 million, zero, somewhere in between. Right. So at what point are we talking about if it's $300 versus $5,000, that would trigger them needing to ask more questions, or if it was millions? I think Justice Connacht alluded to that in one of his other questions earlier. I think the question, I'm sorry, I was going to say, I think the issue is asking, and, you know, I think that goes back to the Knox v. Silotek case, where it's about asking and making the inquiry and not speculating about, or not slumbering on your rights. It's asking, well, there's this Ternyski's motion, what does this mean, and how much could I be at risk for, or have to pay the other side? My point was, when the question is how much could we be at risk for, at what point does it trigger them, trigger the responsibility to go further and ask more questions or seek a second opinion, when it's $500, $100,000, or $2.5 million? I don't know that you can assess a bright line rule to that. I mean, to one person, $500 could be significant. To another, it's hard to assess. You can't really base it on it. I mean, just to the point you mentioned, so I'm concerned about the answer to that argument. Well, there is, you know, the whole line of cases that says you do have a duty to inquire. I mean, you cannot slumber on your rights. I would also say that... Counselor, can I ask a question? Sure. Aren't those cases generally involving claims of damages based on negligence of the attorneys versus this is a claim for damages based on the attorney's fees that they were assured are unconstitutional, they're not going to be recovered. Everything that they got, the information they got from their attorneys was, even if it's awarded, it's unconstitutional, there's no basis for it, et cetera. Well, I think first they were told that we can't guarantee what a court will do. And... Well, that might be the first thing out of the box, but then there's a whole bunch of caveats. Well, it's unconstitutional, it's this, it's that. Correct. And I think the point you would make is if we didn't raise those arguments of constitutionality, then we'd be up here on the other side of it saying, you failed to raise all those arguments before the trial or appellate courts and you committed malpractice in that sense. I think the whole point of my colleague's questions is, at all of those prior stages, damages, as far as attorney's fees, is all speculation. And as such, it doesn't really put anybody on notice of anything. At what point do those damages become fixed? In other words, we know exactly what the damages are, and that's when the court awards $2.5 million, isn't it? Well, that doesn't get around. Yes, those were awarded in September of 2020. Well, they said yes to the attorney's fees in September 2020 when this court ruled, and then ultimately the judge made a ruling. But the plaintiffs were on notice that they could be assessed. And I think what you're going to see is maybe they weren't on notice of the amount. But that's not before the court right now, and what we really have is, what's the underlying case filed in the statute of limitations? Well, I'm on notice that climate change is going to change my life. I don't know what questions to ask. I already recycled. But isn't the question then, how will climate change change my life? How will this motion for attorney's fees impact me? It won't impact me at all if it's not awarded, or if it's awarded in a very modest amount. It won't make much difference to me. The risk, it seems to me, is not just based on attorney's fees might be awarded. But if they are awarded, they're going to be very high. Well, I think you're delving into, if this case were to proceed, what the underlying issues would be, not necessarily, are we here on the statute of limitations? True. Any further questions? And I can just finish my argument by saying that I just asked you to look at the complaint as it was originally pled. I know that counsel has said we sought leave to amend, but I don't even think under the current law that their proposed amended complaint meets the allegations for fraudulent concealment or equitable estoppel. Clearly, the trial court never got there because it did not allow the leave. But just take a look at the original complaint. Even the proposed amended complaint has allegations relating to before the May 2016, or at the time of the May 2016 trial. And you started your argument that way, and I guess the reason I'm kind of confused is I don't really understand how that's relevant to the situation we've got right now. And that is, they got bounced out on the statute of limitations. And the triggering event on the statute of limitations is, at what point were they put on notice that these damages were their responsibility? So that's really the impetus for the appeal is the whole basis of the statute of limitations triggering. It's not damages related to the other underlying claims of negligence by the attorneys. It's the triggering event that got them bounced out of court on the statute of limitations, and that's based on when they became apprised of the attorney's fees damage award. So I'm not sure what the relevance of the remaining claims in the complaint is. That's not actually part of the complaint. I would also say that when you look at the proposed amended complaint, that I think tries to, it says it restructures and tries to clarify everything. There's still allegations in there that we're entitled to damages about whatever else the evidence tends to be. But they're not appealing the dismissal of a complaint based on a failure to adequately plead. They're based on a dismissal of a complaint based on the statute of limitations. And the statute of limitations is directly related to the attorney's fees award, not the underlying claims, because like you said, they never got there. Right, but if you look at the complaint, that's what's in there as well. Okay, anyway. Thank you, I appreciate it. Thank you. Thank you. Mr. Patterson, you have the mic. Just briefly, Your Honor, I think as I mentioned in my opening argument, the strong case law says that it's not the allegations of the negligent act that trigger the statute of limitations. You have to have actual damages. That's Evanston v. Riceboro in northern Illinois, emergency physicians v. Landau. We've made it clear in our briefing to this court, if not further, that we are claiming the attorney fees as damages, period. That's what we're claiming damages. It's on page 33 of our opening brief. The Knox case says you have to look at different statute of limitations for different damages. The Hermanson case, for some reason footnote three sticks in my mind, in the Hermanson case where they explained on appeal that they were alleging damages for a certain time frame, and those were the claims that were being decided, not relating back to some earlier time frame or some earlier negligent acts. We are permitted to plead some background facts. The allegations of negligence at the trial level don't, in other words, if there was a negligence in failing to get a good expert or whatnot, that doesn't trigger the damages that we're suing for. That doesn't trigger the malpractice. And with respect to the quantity of the risk, there's no question that the cost-benefit analysis is something that every attorney has to assist their clients with making. And the amount of the exposure is a clearly relevant fact. And it's more damning here, in my opinion, because they knew that there was an excess of seven figures that were being fought about between the excess insurers and the federal court case that they had appearances in. And so if there's questions of fact about what they should have been told or what they would have done, that doesn't mean that the case shouldn't proceed. It doesn't mean it's barred before we even get to that point. So I think all those things would be questions of fact that the experts in the discovery would have to sort out. And unless there are questions, I thank the court very much. No fears, there are none. Thank you, counsel. Thank you both. The court will take this matter under advisement, and the court stands in recess.